489 P.2d 1252

James H. MASSINGILL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Hagen Construction Company, Respondent Employer,

State Compensation Fund, Respondent Insurance Carrier.

No. 1 CA–IC 535.

Court of Appeals of Arizona, Division 1.

Oct. 27, 1971.

Rehearing Denied Nov. 28, 1971.

Lawrence Ollason, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Harlan J. Crossman, Phoenix, for respondents employer and carrier.

HOWARD, Judge.

On February 18, 1963, the petitioner, a 55 year-old "cat" operator injured his neck when his "cat" ran upon a large boulder and suddenly slipped sideways.

Petitioner was seen by Dr. Walter M. O'Brien on February 22, 1963. Dr. O'Brien diagnosed petitioner's injuries as a sprain to the spinal musculature from the neck to the lower dorsal area. Petitioner continued under this doctor's care until May 30, 1963. Petitioner subsequently left the State of Arizona and went to Fairbanks, Alaska without being discharged by Dr. O'Brien.

A Findings and Award for Temporary Disability was issued by the Industrial Commission on July 25, 1963, finding no permanent disability attributable to the injury.

On March 9, 1966, the petitioner filed a petition to reopen his claim alleging that he had had trouble with his neck since the date of the injury.

On April 28, 1966, the Industrial Commission issued findings and an award denying the reopening of the claim which was followed by a timely petition for hearing before the referee by petitioner.

Prior to the hearings, which were held on November 26, 1969 and May 25, 1970, a group consultation consisting of Drs. Weber, Fonseca and Eddy, was held on September 26, 1966. The conclusion of the consultants at that time was that the petitioner showed no objective evidence of significant abnormalities of the neck attributable to the accident of 1963.

Prior to the 1969 and 1970 hearings, another group consultation was held consisting of Drs. Cutshaw, Willingham, DeVries and Moore. These doctors found, among other things, that no further medical treatment was indicated, but recommended that the claimant be seen by psychiatrists prior to final evaluation.

On May 24, 1967, petitioner was seen by Dr. Keith Treptow, a psychiatrist.

On July 27, 1970, the Industrial Commission entered a decision upon hearing and findings and award denying the reopening of the claim. It is from this award that the petitioner takes his appeal.

Petitioner presents the following questions. (1) Did the injury aggravate or cause a heart condition for which the petitioner should receive compensation? (2) Did the injury cause a conversion reaction for which the petitioner should receive compensation? (3) Did the Industrial Commission have reasonable evidence upon which to base its decision?

## THE HEART ATTACK AND THE ACCIDENT

██ Petitioner who had his first heart attack in 1967, claims that both Dr. Thomas Tabor, Jr. and Dr. Charles Hornisher testified as to a causal connection between the accident and the heart attack. We have reviewed the record and are unable to find such testimony. In fact, Dr. Hornisher testified as follows:

"Q. Let me see if we can go into this a little farther, doctor. In this case, what were the factors that caused his heart attack?

A. Probably a multiplicty of factors, one is his age. I think he was fifty-seven at the time of his heart attack. His mother and father both had vascular disease.

Q. Would this vascular disease by his parents show a tendency or hereditary inclination?

A. Yes, definitely. These things run in families, tend to, anyhow. It cer-

tainly predisposes the offspring to something like this. How much stress he was under at the time of this I don't know and what his family life is. He has, I think, nine children.

MR. MASSINGILL: Eleven.

BY THE WITNESS: Eleven. You can't have a family that size without having some stress. I believe he has been married a couple of times, and this certainly produces stress in living, and he had been off work for three years or something, and probably had some financial problems, too, involved in this.

BY MR. CROSSMAN:

Q. But these would be more of a personal nature?

A. Yes, stress factors.

Q. But isn't it true, Doctor, when you talk about stress and strain, we are talking about emotional stress?

A. Emotional stress.

Q. Isn't it true that a man can go along, and it's similar to physical work, that he can become, or his capillaries are capable of sustaining a certain amount of blood pressure based upon the amount of stress and strain he is used to, so if it is actually a constant stress and strain then the continuous stress and strain will not cause a heart attack?

A. Most likely not, except with time. Some people are going to have a heart attack, some earlier in life and some later, some never.

Q. Is that because of the stress and strain, Doctor, or because of the progressive nature of the disease?

A. Oh, the progressive nature of the blood vessel breakdown, blocking or hardening, arteriosclerosis. Any number of things can do it.

Q. Really has nothing to do with the emotional stress and strain, is that correct?

A. No, not directly."

The doctor further testified that there was no correlation between the injury of 1963 and the heart attack in 1967 when he testified as follows:

"A. I don't think there is any correlation between the two, of an accident three years prior and the heart attack. You can have an automobile accident, for example, get hit in the chest with a steering wheel and a week later have a heart attack. There you would have a direct correlation, I am sure. This happens quite often, even in young people.

Q. I see, but the difference in time here

* * *.

A. There is quite a difference in the time factor.

Q. Wouldn't this lead you to believe that there is no correlation in this case?

A. There is probably no direct correlation there.

Q. Can you say that as a reasonable medical probability?

A. Yes, sir."

In the case of Bedel v. Industrial Commission, 5 Ariz.App. 470, 428 P.2d 134 (1967), the court said:

"When the results of an industrial accident are not clearly apparent to the layman, the causal relationship between the accident and the petitioner's physical condition must be determined by expert medical testimony. In this case there was no affirmative medical testimony that a causal relationship existed between the accident and the petitioner's disability." 5 Ariz.App. at 473, 428 P.2d at 137.

In the case *sub judice*, the testimony of the expert heart specialist was to the effect that there was no relationship between the accident of 1963 and the subsequent heart attack of 1967.

## CONVERSION REACTION AND THE INJURY OF 1963

■ Petitioner claims that the industrial accident caused a mental disability for which he should be compensated. Again, petitioner has pointed out to us pages of the transcript where he claims a medical witness, Dr. Haeusseler, supports this contention. We are unable to find such support in the transcript and on the contrary find the following testimony from the psychiatrist:

"Q. Were you able to find anything from a psychiatric point of view which would explain his neck symptoms, low back symptoms, upper back symptoms?

A. No. I think sometimes when people are somewhat depressed they have greater attention drawn to their body so that they become more aware of the little aches and pains that people experience or have, normal physiological feelings, thinks [sic] like peristalsis, this sort of thing. So they become more aware of their bodily symptoms, but I couldn't really say that any of his symptoms were on the basis of any psychiatric or psychological problem."

Dr. Treptow, a neuropsychiatrist, reported:

"Mental status examination revealed no evidence of a psychosis and no evidence of a psychoneurosis.

Past history revealed no particular childhood trauma, at least none that he could relate, and although his marital adjustment is something less than ideal, I could find no history of anything to indicate a psychiatric illness. This man does not impress me as being a conversion reaction."

In short, no evidence was presented to the Commission which would allow it to make a monetary award to petitioner.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12-120, subsec. E.